UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

FILED

DEC 6 2022

U.S. DISTRICT COURT-WVND
WHEELING, WV 26003

UNITED STATES OF AMERICA,

v.

DALTON HAAS,

                Defendant.

Criminal No. 5:22-CR-51

Violations: 15 U.S.C. § 645(a)
               18 U.S.C. § 1343

# INDICTMENT

The Grand Jury charges that:

## INTRODUCTION

At all times relevant to this Indictment:

### The COVID-19 Pandemic and the CARES Act

1. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or about March 2020, designed to provide emergency financial assistance to the millions who were suffering the economic effects caused by the COVID-19 pandemic.

2. Among other relief efforts, the United States sought to provide financial support to eligible businesses that could be used to offset certain business expenses.

3. The Small Business Administration ("SBA") is an executive branch agency of the United States government that provided support to entrepreneurs and small businesses. The SBA is headquartered in Washington, DC and maintained its computer servers outside of the State of West

Virginia. The SBA's mission was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

4. As part of this effort, the SBA enabled and provided for loans that came directly from the U.S. Government.

## Economic Injury Disaster Loans

5. One source of relief provided by the CARES Act was the authorization for the SBA to provide Economic Injury Disaster Loans ("EIDL") to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

6. In order to obtain an EIDL, a qualifying business had to submit an online application to the SBA and provide information about its operations, including the number of employees, gross revenues for the twelve-month period preceding the disaster (identified as January 31, 2020), and the cost of goods the business sold in the twelve-month period preceding the disaster. The applicant also had to certify that all the information in the application was true and correct to the best of the applicant's knowledge.

7. In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses applying for an EIDL ("EIDL Advance"). The amount of the EIDL Advance was determined by the number of employees claimed by the applicant, with an advance of $1,000 for each employee up to $10,000.

8. EIDL applications were submitted directly to the SBA online at https://covid19relief.sba.gov/#/ and processed by the agency with support from a government contractor, Rapid Finance. The amount of each loan was based in part, on the information provided by the applicant about the number of employees, operating expenses for the twelve months prior to the date of the disaster, gross revenue for the twelve months prior to the disaster, and the cost of goods sold for the twelve months

prior to the date of the disaster. Any funds issued under EIDL were issued directly by the SBA.

9. EIDL funds could be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.

## COUNTS ONE THROUGH SEVEN

(Wire Fraud)

10. The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 9 of this indictment as if fully set forth herein.

11. Beginning in or about March 2020 and continuing until in or about January 2021, defendant **DALTON HAAS** devised and conducted a scheme to defraud the United States by submitting fraudulent EIDL applications with EIDL Advance requests to the SBA containing false representations.

12. It was part of the scheme that **DALTON HAAS** submitted EIDL applications and requests for EIDL Advances in the names of various businesses he purportedly owned. All of the applications submitted by **DALTON HAAS** included false representations designed to fraudulently obtain proceeds from the SBA.

13. It was a further part of the scheme that the **DALTON HAAS** would misrepresent and conceal material facts regarding the businesses or organizations for which he submitted applications EIDL Loans and Advances. In particular, **DALTON HAAS**, materially misrepresented the number of employees of the business, the gross revenue of the business in the twelve months preceding the disaster caused by the COVID pandemic, and the cost of business goods sold in the twelve months preceding the COVID pandemic.

14. It was further part of the scheme that **DALTON HAAS** reported to own a sole proprietorship called the Lebanese Restuarant (sic) and Bakery that he purportedly established in November 2019.

15. It was further part of the scheme that **DALTON HAAS** reported to own a C-type non-profit corporation established in 2018 called the "West Virginia Hockey League." West Virginia Secretary of State records show the corporation was established on April 15, 2020.

16. It was further part of the scheme that **DALTON HAAS** reported to be the sole proprietor of the "Wheeling Wine Festival" which he claimed to establish in January 2019.

17. It was part of the scheme that **DALTON HAAS** reported to own a non-profit limited liability company he established in June 2019 called "Wheeling Hockey Association." West Virginia Secretary of State records reflect that the limited liability company voluntary association became effective April 20, 2020.

18. On or about the dates specified as to each count below, for the purpose of executing, and attempting to execute, the scheme to defraud, in Wheeling, in Ohio County, in the Northern District of West Virginia, **DALTON HAAS** did knowingly transmit or cause to be transmitted by means of a wire communication in interstate commerce the following writings, signs, signals, pictures, and sounds:

| Count | Date | Description |
| --- | --- | --- |
| 1 | March 30, 2020 | An internet transmission originating from West Virginia to the SBA server in Iowa constituting a false and fraudulent EIDL application for a loan and a request for an advance of $10,000 in the name of "Lebanese Restuarant (sic) and Bakery". |
| 2 | March 30, 2020 | An internet transmission originating from West Virginia to the SBA server in Iowa constituting a false and fraudulent EIDL application for a loan and a request for an advance of $10,000 in the name of "West Virginia Hockey League". |
| 3 | April 13 2020 | A wire transfer originating from Colorado to Virginia to Main Street Bank in West Virginia constituting a fraudulently obtained EIDL advance of $10,000 for the "Lebanese Restuarant (sic) and Bakery" deposited in Dalton Haas' Main Street Bank Account ending 0338. |
| 4 | April 21, 2020 | A wire transfer originating from Colorado to Virginia to Main Street Bank in West Virginia constituting a fraudulently obtained EIDL advance of $10,000 for the "West Virginia Hockey League" deposited in Dalton Haas' Main Street Bank Account ending in 0181. |

| | | |
|---|---|---|
| 5 | March 30, 2020 | An internet transmission originating from West Virginia to the SBA server in Iowa constituting a false and fraudulent EIDL application for a loan and a request for an advance of $10,000 in the name of "Wheeling Wine Festival". |
| 6 | July 7, 2020 | An internet transmission originating from West Virginia to the SBA server in Iowa constituting a false and fraudulent EIDL application for a loan and a request for an advance of $10,000 in the name of "Wheeling Hockey Association". |
| 7 | January 2, 2021 | An internet transmission originating from West Virginia to the SBA server in Iowa constituting a false and fraudulent EIDL application for a loan and a request for an advance of $10,000 in the name of "Wheeling Wine Festival". |

In violation of Title 18, United States Code, Section 1343.

## COUNTS EIGHT THROUGH TWELVE .

(False Statement to the SBA)

19.     The Grand Jury re-alleges and incorporates by reference the factual allegations contained in paragraphs 1 through 9 of this Indictment as if fully set forth herein.

20.     On or about the dates specified as to each count below, in Wheeling, Ohio County, West Virginia, within the Northern District of West Virginia, the defendant **DALTON HAAS** did knowingly and intentionally make a false statement to the SBA for the purpose of influencing in any way, the actions of the SBA.

| Count | Date | Description |
|---|---|---|
| 8 | March 30, 2020 | False statement to the SBA that the "Lebanese Restuarant (sic) and Bakery" was established in November 2019, that it had $22,000 gross revenue in the twelve months prior to the pandemic, $8,000 was the cost of goods sold in the previous 12 months and that there were 25 employees when he knew the business was not in operation. |
| 9 | March 30, 2020 | False statement to the SBA that "West Virginia Hockey League" had gross revenues of $40,000 in a twelve-month period prior to the pandemic, that the costs of operation in the twelve months prior was $50,000 and that ten people were employed by West Virginia Hockey League when he knew the West Virginia Hockey League did not have the gross revenues, costs of operation or employees reported. |
| 10 | March 30, 2020 | False statements to the SBA that the "Wheeling Wine Festival's" gross revenue in the twelve months prior to the pandemic was $85,000, that the costs of good in the previous twelve months was $12,000 and that the Wheeling Wine Festival employed 20 individuals when he knew that the Wheeling Wine Festival did not have the gross revenue, costs of goods or number of employees reported. |
| 11 | July 7, 2020 | False statements to the SBA that in the twelve months prior to the pandemic, "Wheeling Hockey Association's" costs of goods sold was $13,000, that the gross revenues was $35,000, and that it employed 15 people when he knew that the Wheeling Hockey Association did not have the gross revenue, cost of goods or number of employees reported. |
| 12 | January 2, 2021 | False statement to the SBA that the "Wheeling Wine Festival" had gross revenues of $95,000 in the twelve months prior to the pandemic, |

|  |  | the cost of goods sold in the twelve months prior the pandemic was $5,000 and that the Wheeling Wine Festival employed ten individuals when he knew that the Wheeling Wine Festival did not have the gross revenue, cost of goods or number of employees reported. |
|---|---|---|

In violation of Title 15, United States Code, Section 645(a).

# **FORFEITURE ALLEGATION**

Wire Fraud

1. Pursuant to Title 28, United States Code, Sections 2461(c), Title 18 United States Code, Sections 981(a)(1)(C), 1956(c)(7)(A), and 1961(1) and Title 21, United States Code, Section 853, the government will seek the forfeiture of property as part of the sentence imposed in this case, that is, the forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Title 18, United States Code, Section 1343, or a conspiracy to violate such offense, including a money judgment in the amount of at least $20,000.

2. Pursuant to Title 28, United States Code, Section 2461(c), the government will seek forfeiture of substitute property up to the value of property subject to direct forfeiture that is not available for forfeiture on account of any act or omission contemplated by Title 21, United States Code, Section 853(p)(1).

A true bill,

/s/
Foreperson

/s/
WILLIAM IHLENFELD
United States Attorney

Jennifer T. Conklin
Assistant U.S. Attorney

8